UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------- X
BRIAN FORD, Individually and on Behalf of : Case No.: _____
All Others Similarly Situated,           :
                                         : **CLASS ACTION COMPLAINT**
         Plaintiff,                      : **FOR VIOLATIONS OF**
                                         : **SECTIONS 14(a) AND 20(a) OF**
    -against-                            : **THE SECURITIES EXCHANGE**
                                         : **ACT OF 1934**
RAYTHEON COMPANY and THOMAS A.           :
KENNEDY,                                 : **JURY TRIAL DEMANDED**
                                         :
         Defendants.                     :
                                         :
------------------------------------- X

Plaintiff Brian Ford ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other former stockholders of Raytheon Company ("Raytheon" or the "Company") against Raytheon and its Chief Executive Officer, Mr. Thomas A. Kennedy ("Kennedy" or the "CEO" and, together with Raytheon, the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a) respectively, and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the merger and certain related transactions (collectively, the "Transaction") between Raytheon, Light Merger Sub Corp. ("Merger Sub"), and United Technologies Corporation ("UTC").

2. Raytheon, incorporated on December 17, 1953, is a technology company, which specializes in defense and other government markets through the development of integrated products, services, and solutions. The Company operates through five segments: Integrated Defense Systems; Intelligence, Information and Services; Missile Systems; Space and Airborne

1

Systems; and Forcepoint. The Company serves both domestic and international customers, primarily as a prime contractor or subcontractor on a range of defense and related programs for government customers.

3. UTC, incorporated on July 21, 1934, is engaged in providing high technology products and services to building technologies and aerospace industries around the world.

4. On June 9, 2019, Raytheon announced it had entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub would merge with and into Raytheon, with Raytheon continuing as the surviving entity (the "Merger") and, following the Merger, the name of the combined company would change to Raytheon Technologies Corporation (the "Combined Company").

5. At a special meeting of the stockholders held on October 11, 2019, a majority of Raytheon stockholders voted to approve the Merger after being solicited via a materially misleading and incomplete definitive proxy statement (the "Proxy") that was filed with the SEC on September 10, 2019. Pursuant to the Merger, the Company's shareholders received 2.3348 fully paid and nonassessable shares of UTC common stock in exchange for each share of Raytheon common stock they owned (the "Merger Consideration").

6. The Proxy contained materially misleading information concerning the financial projections for Raytheon, UTC, and the Combined Company. The Proxy was an essential link in accomplishing the Merger, which undervalued Raytheon and caused Plaintiff and the Class to suffer financial loss in that they did not retain a fair equity stake in the post-Merger Combined Company.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found and transact business in this District. According to the 10-K Annual Report filed by the Company with the SEC on February 23, 2019, as of December 31, 2018, the Company has "major operations" in Minneapolis, Minnesota. Those offices are located at 3001 Broadway St. NE, Minneapolis, MN 55413. Furthermore, the Company has been registered as a business with the Minnesota Secretary of State since 1988, and its registered office address is listed as 1010 Dale Street North, St. Paul, MN 55117. Therefore, as the Defendants are found and transact business in this District, venue here is appropriate.

## PARTIES

10. Plaintiff is, and at all relevant times has been, a holder of Raytheon common stock.

11. Defendant Raytheon is incorporated in Delaware and maintains its principal executive offices in Waltham, Massachusetts. The Company maintains "major operations" in Minneapolis, Minnesota. Raytheon develops technologically advanced and integrated products, services and solutions in defense and related programs for government customers. *See* 10K Annual Report, filed on February 23, 2019. The Company's common stock was traded on the NYSE under the ticker symbol "RTN". The financial aspect of the Transaction is set to close by mid-2020, at which time a new entity will emerge, Raytheon Technologies Corporation, which will trade under the ticker symbol "RTC".

12. Defendant Thomas A. Kennedy is, and has been at all relevant times, a director of Raytheon, Chairman of the Board, and Chief Executive Officer of the Company.

## CLASS ACTION ALLEGATIONS

13. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all other similarly situated public stockholders of Raytheon who have been harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with Defendants.

14. This action is properly maintainable as a class action because:

   a. The class is numerous that joinder of all members is impracticable. As of, September 10, 2019, the record date for Raytheon stockholders to be eligible to vote on the Transaction, there were approximately 278 million shares of Raytheon common stock outstanding, held by thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Raytheon will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

   i) Whether Defendants misrepresented or omitted material information concerning the Transaction in the Proxy, in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9;

   ii) Whether Kennedy violated Section 20(a) of the Exchange Act; and

   iii) Whether Plaintiff and other members of the Class suffered damages as a result of being compelled to vote for the Transaction based on the materially misleading Proxy.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**FURTHER SUBSTANTIVE ALLEGATIONS**

15. On September 10, 2019, Defendants caused the materially misleading Proxy to be filed with the SEC. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresented and omitted material information that was necessary for the Company's shareholders to make an informed decision in connection with the Merger. As such, Defendants were negligent in carrying out their duties and fulfilling their obligations under Section 14(a) and Rule 14a-9.

16. First, the Proxy entirely omitted the financial projections for the pro forma combined company giving effect to the Merger (the "Pro Forma Projections"). The Proxy indicates that Raytheon's financial advisors—Citigroup Global Markets Inc. ("Citigroup"), RBC Capital Markets, LLC ("RBC"), and Evercore Group LLC ("Evercore" and together with Citigroup and RBC, the "Financial Advisors")—relied upon projections for the pro forma Combined Company in conjunction with preparing their fairness opinions. Proxy at 94, 96, 103, 105. However, the Pro Forma Projections were omitted from the Proxy.

17. Despite omitting the Pro Forma Projections, Defendants elected to tout the benefits Raytheon shareholders would receive as a result of the Transaction and their continued ownership stake in the Combined Company. Specifically, on pages 70-72 of the Proxy, the "material" positive factors for recommending Raytheon shareholders vote in favor of the Merger were listed, including the following:

- The fact that the combination will create a premier systems provider, with advanced technologies to address the rapidly growing aerospace and defense segments, that will have a balanced and diversified aerospace and defense portfolio of platform-agnostic capabilities that is expected to be resilient across business cycles;

- The significant near- and long-term benefits expected to result from combining Raytheon's and UTC's complementary technologies, including the expectation

6

      that the combined company will be able to leverage combined annual company- and customer-funded research and development expenditures of approximately $8 billion initially and the capabilities of over 60,000 engineers to develop new, critical technologies more quickly and efficiently than either company could on its own;

- The expectation that more than $1 billion in gross annual run-rate cost synergies will be realized by the fourth year following the completion of the merger, and UTC's successful track record in realizing anticipated synergies from its recent business combination transactions;

- The potentially significant accelerated or incremental long-term revenue opportunities expected to be generated from combining the technologies of both companies;

- The expectation that the combined company will be well-capitalized, generate robust free cash flow and have a strong balance sheet that will support both continued investment and facilitate the return of significant amounts of capital to its shareowners;

. . .

- The opportunity that Raytheon stockholders will have to participate in the future performance of the combined company, including the revenue and cost synergies realized as a result of the combination, because holders of outstanding shares of Raytheon common stock as of immediately prior to the completion of the merger will hold approximately 43% of the outstanding UTC common stock immediately after completion of the merger;

Proxy at 69-70.

18.    The Pro Forma Projections were a key factor utilized by both the Board and the Financial Advisors in conjunction with assessing the fairness of the Merger Consideration—yet they were omitted from the Proxy. The Pro Forma Projections were plainly material to Raytheon's shareholders, as they spoke squarely to the question the Company's shareholders had to answer when determining whether to consent to the Merger: is a smaller stake in the Combined Company more or less valuable than a full stake in the standalone company? Without the Pro Forma Projections, Defendants presented the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Merger.

19.    Second, the Proxy omits the net income projections for Raytheon, UTC, and the

7

pro forma Combined Company (the "Net Income Projections"). Defendants elected to summarize the projections for Raytheon, UTC, and a synergy metric of the Combined Company in the Proxy, but they excised and failed to disclose the Net Income Projections. By choosing to selectively disclose only certain projections in the Proxy and withholding the Net Income Projections, Defendants caused the tables of projections on pages 114-118 of the Proxy to present a materially incomplete and misleading valuation picture of Raytheon.

20.     Net income is a crucial and irreplaceable metric necessary for shareholders to make a reasonable determination into whether the value of a merger consideration is fair, and a proxy that selectively discloses only certain other distinct financial metrics while omitting net income projections presents a misleadingly incomplete picture of the company's value. Net income projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

21.     If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants elected to disclose only some of the projections relied upon by the Financial Advisors and the Board, but omitted the Pro Forma Projections and the Net Income Projections, which were indisputably material to Raytheon shareholders trying to assess the fairness of the Merger Consideration. Thus, the omission of these projections rendered portions of the Proxy—those portions which selectively disclosed the projections for Raytheon and purportedly summarized the Financial Advisors' valuation analyses—materially incomplete and misleading. Therefore, the disclosed projections and valuation "summaries" presented a misleading half-truth of the Company's actual value.

## SHAREHOLDERS SUFFERED FINANCIAL LOSS AS A RESULT OF
## THE UNFAIR MERGER

22. In order to consummate the merger, Defendants needed the approval of the Company's shareholders. To obtain such approval, they negligently caused or allowed the materially incomplete and misleading Proxy to be disseminated to shareholders. Accordingly, the materially misleading Proxy was an essential link in accomplishing the Merger, which undervalued Raytheon shareholders' shares and caused Plaintiff and the Class to suffer financial loss in that they did not retain a fair equity stake in the post-Merger Combined Company.

23. The Transaction received widespread condemnation for not being in the best interests of shareholders. *See* Larry Edelman, *Raytheon deal with UTC gets cold shoulder from investors*, THE BOSTON GLOBE (Oct. 24, 2019, 1:07 PM), https://www.bostonglobe.com/business/2019/06/12/raytheon-deal-with-utc-gets-cold-shoulder-from-investors/2Y3XElWXsB06p6Qhdy5eBM/story.html. Indeed, in the week following the announcement of the Transaction, shares of Raytheon fell 4.8% and shares of UTC fell 6.1%. One reporter stated a reason for the market discontent was that "Raytheon shareholders [were] unhappy that the Company was the merger target and yet received no premium." Andrew Bary, *The United Technologies Merger with Raytheon Isn't Great for Shareholders. But both stocks are cheap*, BARRON'S (Oct. 24, 2019, 1:07 PM), https://www.barrons.com/articles/hate-the-united-technogies-merger-with-raytheon-love-the-stocks-51560556803 (the "Barron's Article"). Furthermore, activist investors harshly criticized the deal, and some publicly vowed to fight the Transaction. Pershing Square Capital's Bill Ackman stated that "management credibility is at risk just from proposing, let alone effectuating such a transaction." Joe Williams, *Activist investor Bill Ackman opposes Raytheon-United Technologies merger*; FOX BUSINESS (Oct. 24, 2019, 1:11 PM), https://www.foxbusiness.com/industrials/activist-investor-bill-ackman-opposes-raytheon-united-technologies-merger.

24. As plainly stated in the Barron's Article, "the United Technologies Merger with Raytheon isn't great for shareholders." In spite of the negative market reaction, both Companies moved forward with the Transaction and with the issuance of the materially misleading and incomplete Proxy. Without the Net Income and Pro Forma projections, shareholders were not unable to fully understand the recommendations of the Financial Advisors in so voting for the Transaction. As a result of relying on the materially misleading Proxy, the Company's shareholders are left with an unfair equity stake in the Combined Company, and so have suffered a serious financial loss.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 Promulgated Thereunder**

25. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

26. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

27. SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any 14D9 statement, form of 14D9, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order

to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a 14D9 for the same meeting or subject matter which has become false or misleading.

28. Defendants issued the Proxy with the intention of soliciting stockholder support for the Merger. Defendants reviewed and/or authorized the dissemination of the Proxy and the use of their name in the Proxy. In so doing, the Defendants made untrue statements of fact and/or omitted to state material facts necessary to make the statements made not misleading. Furthermore, Kennedy, by virtue of his role as CEO and Chairman of the Board, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a). Kennedy was therefore negligent, as he had reasonable grounds to believe material facts existed which were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although he could have done so without extraordinary effort.

29. Kennedy knew or was negligent in not knowing that the Proxy was materially misleading and omits material facts that are necessary to render it not misleading. Kennedy undoubtedly reviewed and relied upon the omitted information identified above in connection with his decision to approve and recommend the Merger. Indeed, Kennedy was required to review the Financial Advisors' analyses in connection with his receipt of their fairness opinions, question the Financial Advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there were no material misstatements or omissions. Kennedy knew or was negligent in not knowing that the material information identified above was omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

30. The preparation of a proxy statement by corporate insiders containing materially misleading statements or omitting a material fact constitutes negligence. Kennedy was negligent in choosing to omit material information from the Proxy or in failing to notice the material

omissions in the Proxy upon reviewing it, which he was required to do carefully. Indeed, Kennedy was intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, the review of both companies' financial projections, and the preparation of the Proxy.

31.     The misrepresentations and omissions in the Proxy were material to Plaintiff and the Class. The omissions and misleading statements in the Proxy are material in that a reasonable stockholder would have considered them important in deciding how to vote on the Merger. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information available to stockholders.

32.     As a direct and proximate result of the dissemination of the materially misleading Proxy which Defendants used to obtain stockholder approval of the Merger, Plaintiff and the Class have suffered damages and actual economic loss (*i.e.*, the difference between (i) the actual fair and intrinsic value of their Raytheon shares and (ii) the value of the consideration they will actually receive in connection with the Merger) in an amount to be determined at trial. By reason of the misconduct detailed herein, Defendants are liable pursuant to 14(a) of the Exchange Act and SEC Rule 14a-9.

## COUNT II

**On Behalf of Plaintiff and the Class Against Kennedy for Violations of Section 20(a) of the Securities Exchange Act of 1934**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Kennedy acted as a controlling person of Raytheon within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his position as CEO and Chairman of the Board of Raytheon, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with

12

the SEC, he had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially misleading.

35. Kennedy was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

36. In particular, Kennedy had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. As outlined above, the omitted information identified above was specifically reviewed by Kennedy and the Board prior to voting on the Merger and prior to disseminating the Proxy. The Proxy at issue contains the recommendation of Kennedy to approve the Merger. He was thus directly involved in the making of this document.

37. In addition, as the Proxy sets forth at length, and as described herein, Kennedy was involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that Kennedy reviewed and considered. Kennedy participated in drafting and/or gave his input on the content of those descriptions.

38. By virtue of the foregoing, Kennedy has violated Section 20(a) of the Exchange Act.

39. As set forth above, Kennedy had the ability to exercise control over and did control the issuance of a materially misleading Proxy in violation of Section 14(a) and Rule 14a-9, by his acts and omissions as alleged herein. By virtue of his position as a controlling person, he is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Kennedy's

negligent conduct, Plaintiff and the Class have suffered damages and actual economic loss (*i.e.*, the difference between (i) the actual fair and intrinsic value of their Raytheon shares and (ii) the value of the consideration they will actually receive in connection with the Merger) in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Awarding Plaintiff and the Class damages sustained as a result of Defendants' wrongdoing, including, but not limited to, pre-judgment and post-judgment interest;

C. Awarding Plaintiff and the Class the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

D. Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity, and the federal statutory provisions sued hereunder; and

E. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

//
//
//
//
//
//

Dated: October 30, 2019

**OF COUNSEL**
**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
Email: jmonteverde@monteverdelaw.com
            mschreiner@monteverdelaw.com

*Counsel for Plaintiff*

Respectfully Submitted,

/s/ Garrett D. Blanchfield
Garrett D. Blanchfield (#209855)
Roberta A. Yard (#322295)
**REINHARDT WENDORF &**
**BLANCHFIELD**
332 Minnesota Street, Suite W-1050
St. Paul, MN 55101
Tel: 651-287-2100
Fax: 651-287-2103
Email: g.blanchfield@rwblawfirm.com

*Counsel for Plaintiff*